# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **L.M.-1 and L.M.-2**

**No. 23-6** (Grant County CC-12-2022-JA-23 and CC-12-2022-JA-24)

## MEMORANDUM DECISION

Petitioner Father D.M.[1] appeals the Circuit Court of Grant County's December 27, 2022, order terminating his parental rights to L.M.-1 and L.M.-2.[2] On appeal, petitioner argues that the circuit court erred in terminating his parental rights when he was accused of abuse to a non-biological child who resided in his home. Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In June 2022, the DHS filed an abuse and neglect petition alleging that petitioner physically abused then-five-year-old A.F., a child who lived in petitioner's home along with petitioner's then-fiancé, A.W., and their two daughters, L.M.-1 and L.M.-2.[3] Specifically, A.F.'s biological father picked the child up from the home and discovered that his head and neck were covered in bruises. A.F. was flown to the hospital due to brain swelling. Upon examination, A.F. was found to have

---

[1]Petitioner appears by counsel Grant M. Sherman. The West Virginia Department of Human Services appears by counsel Attorney General Patrick Morrisey and Assistant Attorney General Lee Neizgoda. Counsel Lauren M. Wilson appears as the children's guardian ad litem.

Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2]We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e). Further, because the children share the same initials, we use numbers to differentiate them.

[3]A.F. is the grandchild of A.W. At the time the petition was filed, the DHS stated that it was unclear whether A.W. exercised legal guardianship of A.F. Petitioner's abuse of A.F. formed the basis for the proceedings below, and petitioner was adjudicated of abuse to all three children. The circuit court took no action at disposition in regard to any rights petitioner may have exercised over this child because A.W. and petitioner had separated and were no longer in a relationship. Also, A.F. has been placed with his biological father. Accordingly, custodial rights to A.F. are not at issue in this appeal.

various stages of bruising all over his body. Further, A.F. made detailed disclosures to hospital staff and Child Protective Services ("CPS") outlining extensive physical abuse by petitioner. That same day, a CPS worker also interviewed A.W., who stated that A.F. had been "injuring himself by banging his head on things."

Adjudicatory hearings were held across three days beginning in August 2022. The DHS presented testimony from several of A.F.'s treating physicians and nurses. They explained that A.F. had bruising to his head, face, and neck, with additional injuries to his wrists and legs. Notably, A.F. had ligature marks around his neck that were consistent with strangulation, blood behind a membrane in his ear, and a broken toe. According to the treating medical staff, the location and pattern of the injuries indicated that they were caused by non-accidental trauma that was inflicted upon him. The DHS also elicited testimony from the forensic interviewer who spoke with A.F. following his discharge from the hospital. She testified that A.F. disclosed that petitioner threw him to the ceiling and stepped on his back after he hit the floor. A.W. testified that petitioner was the only person who could have caused A.F.'s injuries because he was the only adult with A.F. when the injuries occurred, and A.F. was not strong enough to injure himself to that extent. A.W. further testified that petitioner was regularly using drugs, including methamphetamine. In addition, numerous text messages between A.W. and petitioner were admitted as evidence showing petitioner's disdain for and resentment of A.F.

Petitioner testified on his own behalf and denied physically abusing A.F. Petitioner claimed that A.F. hurt himself, was a liar, and was sexually inappropriate with L.M.-1 and L.M.-2, who were two and three years old at the time. Petitioner admitted that A.F. was often left in his custody and care while A.W. was at work. He acknowledged that he used physical discipline on A.F. on at least one occasion by smacking him across the face. On cross-examination, petitioner also admitted to sending a text message to A.W. stating that he would "beat the ass off that boy" if he touched L.M.-1 or L.M.-2. When asked if he followed through with that, petitioner responded, "not at that time." Petitioner's mother and sister offered testimony in support of petitioner stating that he was a good father and that they did not think petitioner injured A.F. They further testified that A.F. was a troubled child who frequently lied.

After the conclusion of the evidence, the circuit court adjudicated petitioner as an abusive and neglectful parent. The circuit court found that the medical testimony proved that A.F.'s injuries were not self-inflicted. Further, the testimony established that A.F.'s descriptions as to how he was injured were consistent with his injuries. The circuit court also noted that the text messages to A.W. threatening A.F. showed that petitioner had a motive for hurting A.F. As such, the circuit court found that the DHS proved by clear and convincing evidence that petitioner physically abused A.F., that A.F. was an abused and neglected child, and that L.M.-1 and L.M.-2 were likewise abused and neglected because they resided in the same household.[4]

A multi-day dispositional hearing began in October 2022. The circuit court took judicial notice of the testimony previously provided regarding A.F.'s injuries. The DHS presented evidence

---

[4]*See* W. Va. Code § 49-1-201 (defining "abused child" to include a child threatened by abuse of another child in the home).

that petitioner had recently failed drug tests and admitted to using methamphetamine. The DHS also presented testimony of a CPS worker who explained that the DHS recommended termination of petitioner's parental rights to L.M.-1 and L.M.-2 due to the egregious nature of the abuse suffered by A.F. and that alternatives to termination would not be appropriate. Petitioner elicited testimony of A.W. who testified that it would be in the children's best interests to terminate petitioner's parental rights due to "everything on the table and the evidence that's been presented." A.W. also testified that petitioner had mood swings that she believed were exacerbated by petitioner's drug use. Petitioner then testified that he took a parenting class from which he learned "a few things," however, he was unable to explain or describe what he learned. Petitioner continued to deny that he physically abused A.F. and maintained that A.F. inflicted the injuries on himself. Based on the evidence, the circuit court found that there was no reasonable likelihood that the conditions of abuse could be substantially corrected in the near future and that L.M.-1's and L.M.-2's best interests required termination of petitioner's parental rights. Accordingly, the circuit court terminated petitioner's parental rights to the children. It is from the dispositional order that petitioner appeals.[5]

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, petitioner first argues that the DHS did not prove the allegations in the petition by clear and convincing evidence at adjudication. Petitioner avers that there was no demonstrative evidence of abuse in the form of damage to petitioner's home and that A.F.'s testimony was uncorroborated.[6] It is well established that while the DHS must prove the conditions existing at the time of the filing of the petition by clear and convincing evidence, West Virginia Code § 49-4-601(i) "does not specify any particular manner or mode of testimony or evidence by which the [DHS] is obligated to meet this burden." Syl. Pt. 1, in part, *In re Joseph A.*, 199 W. Va. 438, 485 S.E.2d 176 (1997) (quoting Syl. Pt. 1, *W. Va. Dep't of Health and Hum. Res. ex rel. Wright v. Brenda C.*, 197 W. Va. 468, 475 S.E.2d 560 (1996)). As such, a lack of damage to the home does not negate the mountain of medical evidence provided by the DHS that A.F.'s injuries were non-accidental and inflicted upon him; the threatening text messages to A.W. about hurting A.F. and indicating a motive; and A.F.'s identification of petitioner as his abuser. Furthermore, A.F.'s description as to how petitioner injured him was corroborated by the medical evidence. Four witnesses testified that A.F.'s description of how petitioner injured him was consistent with the location and pattern of the bruises and ligature marks on A.F.'s body. Accordingly, we find no error in the circuit court's adjudication of petitioner as an abusive parent based upon the physical abuse suffered by A.F.; the evidence clearly established that petitioner inflicted severe injuries on A.F. *See In re F.S.*, 233 W. Va. 538, 544, 759 S.E.2d

---

[5]The permanency plan for L.M.-1 and L.M.-2 is reunification with A.W.

[6]In further support of this assignment of error, petitioner asserts that none of the medical professionals testified that A.F.'s injuries were attributable to petitioner "to a reasonable degree of medical certainty or probability." However, petitioner cites to no authority supporting this proposition. Because petitioner fails to provide any analysis concerning this issue in his brief, we decline to address this issue. *See State v. Larry A.H.*, 230 W. Va. 709, 716, 742 S.E.2d 125, 132 (2013) ("Although we liberally construe briefs in determining issues presented for review, issues . . . mentioned only in passing but are not supported with pertinent authority, are not considered on appeal.").

769, 775 (2014) (requiring "clear and convincing evidence" of "conditions existing at the time of the filing of the petition" in order to support a finding of abuse and/or neglect).

Second, petitioner argues that abuse and neglect should not have been "imputed" on L.M.-1 and L.M.-2 because petitioner was identified as a "caretaker" of A.F. in the petition and not a parent, custodian, or guardian. We find no merit in this argument, as petitioner's argument is one of semantics. Despite the DHS's use of the word "caretaker," it is clear that petitioner occupied a custodial role over A.F. as established through extensive testimony. In fact, petitioner admitted that he regularly provided care for A.F. and that A.F. had lived in his home with L.M.-1 and L.M.-2 for several months. *See* W. Va. Code § 49-1-204 (defining "custodian" as "a person who has or shares actual physical possession or care and custody of a child, regardless of whether that person has been granted custody of the child by any contract or agreement."). Though the circuit court did not make a specific finding that petitioner was a custodian of A.F., we find that the record supports such a conclusion.

Petitioner further argues that it was error for the circuit court to adjudicate him of abuse and neglect of L.M.-1 and L.M.-2 because the DHS presented no evidence that they were at risk of being abused. Petitioner acknowledges that "[w]here there is clear and convincing evidence that a child has suffered physical . . . abuse while in the custody of his or her parent(s), guardian, or custodian, another child residing in the home when the abuse took place who is not a direct victim of the physical . . . abuse but is at risk of being abused is an abused child under [West Virginia Code § 49–1–201]." Syl. Pt. 2, *In re Christina L.*, 194 W. Va. 446, 460 S.E.2d 692 (1995). Petitioner contends that because in *Christina L.* we declined "to adopt a blanket rule that parental rights must be *terminated* to all the children residing in the home based merely on the finding that one child is abused," the DHS was required to prove that L.M.-1 and L.M.-2 were at risk of being abused to *adjudicate* petitioner of abuse of L.M.-1 and L.M.-2. *See Christina L.*, 194 W. Va. at 452, 460 S.E.2d at 698 (emphasis added). We disagree as the language to which petitioner cites from *Christina L.* applies to what must be proven to terminate parental rights—not to adjudicate a parent. Pursuant to West Virginia Code § 49-1-201, an "abused child" is "a child whose health or welfare is harmed or threatened by . . . [a] parent . . . who knowingly inflicts . . . physical injury . . . upon . . . another child in the home." Because petitioner physically injured A.F. in the home where L.M.-1 and L.M.-2 resided, the circuit court properly found them to be abused children because of the risk of harm that physical abuse posed. Accordingly, we find that the circuit court did not err.

Finally, petitioner argues that it was error for the circuit court to not consider less restrictive alternatives. We disagree. We have held as follows:

Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604,] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected. Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

4

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Here, a review of the record shows that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future because petitioner continued to deny that he physically abused A.F. *See In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) ("Failure to acknowledge the . . . truth of the basic allegation pertaining to the alleged abuse and neglect . . . results in making the problem untreatable . . . ." (quoting *In re Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004))). As such, the circuit court had a sufficient basis upon which to make the findings necessary to terminate petitioner's parental rights to L.M.-1 and L.M.-2. *See* W. Va. Code § 49-4-604(c)(6) (permitting termination of parental rights upon finding "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the child). Accordingly, termination of petitioner's parental rights without considering less restrictive alternatives was not in error.

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 27, 2022, order is hereby affirmed.

Affirmed.

**ISSUED**: April 15, 2024

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn